WALSH HOLYOKE STEAM BOILER WORKS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4696. Promulgated September 27, 1945.

*Edward J. Keelan, Jr., Esq.*, for the petitioner.
*J. T. Haslam, Esq.*, for the respondent.

OPINION.

SMITH, *Judge*: This proceeding involves a deficiency in excess profits tax for 1941 in the amount of $19,751.67. Petitioner alleges that the respondent erred in determining its equity invested capital for 1941, and also for 1940, as it affects the excess profits carry-over from that year. Other issues raised in the pleadings have been settled by stipulation and the respondent moved for such increase in the deficiency as will result therefrom. The facts as to the remaining issue involving equity invested capital have been stipulated and may be summarized as follows:

Petitioner is a Massachusetts corporation, with its principal office at Holyoke. It filed its returns for 1941 with the collector of internal revenue for the district of Massachusetts, at Boston.

Petitioner was organized in 1928 as the successor of a partnership. It had an authorized capital stock of 5,000 shares of a par value of $100 each, 3,013 of which were issued to the former partners in exchange for the partnership assets as follows:

| | |
|---|---|
| W. J. Walsh | 1,572 shares |
| C. D. Hayward | 1,310 shares |
| C. L. Marran | 131 shares |
| Total | 3,013 shares |

There was a paid-in surplus of $36,377.07.

Under date of May 1, 1928, petitioner issued $250,000 face value of 6½ percent debenture bonds due May 1, 1938. It also had outstanding a large amount of interest-bearing promissory notes. Neither the bonds nor the notes were secured by any mortgage or lien on petitioner's assets.

For a number of years petitioner operated at a loss. On July 19, 1929, the holders of its bonds and notes secured the deposit with a

voting trust of more than 85 percent of its outstanding stock. The members of the voting trust became petitioner's directors and took over the management and control of its business. By December 1, 1932, although it was still operating at a loss, petitioner had reduced its bonded indebtedness, by operation of a sinking fund, to $164,000. It had promissory notes outstanding at that time as follows:

```
Lukens Steel Co_____ $84, 642
Hadley Falls Trust Co_____   38, 500
Holyoke National Bank_____   12, 500
                                                      ----------
    Total_____  135, 652
```

On December 1, 1932, a protective committee was formed, with which all of the notes and about 75 percent of the outstanding bonds were deposited. The interest payments on both the bonds and the notes were defaulted as of October 1, 1933.

During the latter part of 1935 negotiations were begun by one of petitioner's principal stockholders, Vincent P. Marran, to purchase the deposited bonds and notes at a discount. These negotiations were concluded in May 1936 and resulted in the purchase by Marran of all of the outstanding notes and all but $500 of the outstanding bonds at about 20 cents on the dollar. Bonds of the face amount of $163,500, with unpaid interest of $38,492.32, and notes of the face amount of $135,642, with unpaid interest of $26,123.95, were purchased by Marran for $56,428.40. Marran borrowed the money for the purchases from Bethlehem Steel Co.

On December 16, 1936, petitioner, by amendment to its charter and bylaws, changed its authorized capital stock from 5,000 shares of a par value of $100 each to 15,000 of no par value. Thereafter it issued to Marran in exchange for its old debenture bonds and notes 9,394 shares of its no par value stock and $65,000 face value of new 5½ percent debenture bonds. Petitioner also issued to the stockholders 5,606 shares of no par value stock in exchange for the 3,013 shares of old stock, of which Marran received 1,612.25 shares. Immediately prior to and after the recapitalization petitioner's stock was held as follows:

| | Before recapitalization | | After recapitalization | |
|---|---|---|---|---|
| | Shares | Percent | Shares | Percent |
| Helen B. Walsh | 131 | 4. 35 | 243. 75 | 1. 625 |
| Ellen F. Walsh | 845 | 28. 05 | 1. 575 | 10. 5 |
| Charles D. Hayward | 902 | 29. 94 | 1. 687. 5 | 11. 25 |
| Hazel C. Walsh | 131 | 4 35 | 243. 75 | 1. 625 |
| Vincent P. Marran | 873 | 28. 97 | 11, 006. 25 | 73. 375 |
| Clara W. Marran (Mrs. Vincent P. Marran) | 131 | 4. 34 | 243. 75 | 1. 625 |
| | 3, 013 | 100 | 15, 000. 00 | 100 |

Of the new bonds issued to Marran, $25,000 face value was retired prior to 1941 and the others were retired during that year.

In its excess profits tax return for 1941 petitioner claimed an average invested capital of $626,567.49 and an excess profits tax credit (8 percent of average invested capital) of $50,125.40. The average equity invested capital claimed was $600,058.27, and the average borrowed capital $26,509.22. The equity invested capital consisted of $301,300 representing the par value of the stock originally issued in exchange for the assets of the partnership and $298,758.27 representing the aggregate face amount of the notes and debentures, $299,142, plus interest thereon of $64,616.27, less the $65,000 face amount of the new 5½ percent bonds. There was included in the borrowed invested capital of $26,509.22, $16,287.67 representing "new 5½% bonds of face value of $25,000 during the portion of the year they were outstanding ($40,000 face value of the new 5½% bonds was retired prior to 1941, and the remainder of $25,000 was retired during 1941).

The only adjustment which the respondent has made in petitioner's invested capital as reported in its return is the elimination of the amount of $298,758.27 from the equity invested capital. Petitioner alleges that this was error. It contends in its brief that the $298,758.27 should be restored to equity invested capital as "representing obligations of petitioner surrendered to it in exchange for stock in connection with a recapitalization consummated in 1936." Petitioner further states in its brief:

The facts in this case show that in 1936 the petitioner was recapitalized and $363,758.27 of the petitioner's outstanding indebtedness was paid into it in exchange for 9,394 shares of new no par stock of the petitioner and $65,000 in bonds. As a result of this recapitalization, the petitioner's outstanding indebtedness shrunk by the sum of $298,758.27 and it is the petitioner's contention that this is the sum that was paid in for the 9,394 shares of new no par value stock issued to Vincent P. Marran.

There is no question but that the petitioner's financial statement was benefited by the sum of $298,758.27 as upon this exchange its liabilities shrunk by this sum of money and it is clear under Section 718 (a) (1) and (2) of the Internal Revenue Code that this should be added to equity invested capital.

The pertinent provisions of the statute, section 718 of the Internal Revenue Code, are as follows:

SEC. 718. EQUITY INVESTED CAPITAL.

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

(1) MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

(2) PROPERTY PAID IN.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. If the prop-

erty was disposed of before such taxable year, such basis shall be determined under the law applicable to the year of disposition, but without regard to the value of the property as of March 1, 1913. If the property was disposed of before March 1, 1913, its basis shall be considered to be its fair market value at the time paid in. * * *

Granting that petitioner's financial statement was benefited to the extent of $298,758.27, as claimed, by reason of the recapitalization in 1936, it does not follow that its statutory equity invested capital should be increased by that amount. The statute does not purport to include in invested capital benefits to financial statements. It includes only money or property paid in, for stock, or as paid-in surplus, or as a contribution to capital. Forgiven debts, for instance, although they are reflected in the balance sheet, are not included in equity invested capital unless intended as additional capital contributions. *Liberty Mirror Works*, 3 T. C. 1018.

It is stipulated that after petitioner's recapitalization "9,394 shares of the new no par stock and $65,000 face value of new 5½ debenture bonds were issued to Vincent P. Marran in exchange for the above described old debenture bonds and notes which, with interest aggregated $363,758.27." We take the stipulation to mean that Marran "paid in," to use the words of the statute, the $363,758.27 of the old bonds and notes, and interest obligations thereon, for the new stock and bonds. Assuming that the old obligations were "property" within the meaning of the statute, section 718 (a) (2) above, such portion thereof as was paid in for stock would be includible in equity invested capital "in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange."

We do not know, however, what portion of the old obligations was paid in for the stock and what portion for the new bonds. The stipulation contains no facts upon which we can make any reasonable allocation. It gives no inkling of the value, if any, of either the stock or the bonds. The stock was of no par value. We are not told what assets petitioner had, what its business outlook was in 1936, or even in what business it was engaged. From the facts stipulated, we do not see how the stock could have had any substantial value at the time of the recapitalization. Petitioner had been operating at a loss for a number of years and was heavily in debt. Its principal creditors, who were in control of its operations, were willing to accept 20 cents on the dollar for its obligations.

We do not have any evidence as to the relative values of the new bonds and stock. Generally bondholders are preferred over stockholders in a liquidation. We do not know that the bonds were all redeemed prior to or during the taxable year 1941.

Thus we are unable to determine on the facts before us what part, if any, of the old obligations was paid in to petitioner for stock.

Although we do not reach the point of having to determine what

was the "basis" of the property paid in for stock, it might be pointed out that Marran's basis for the old obligations was only $56,428.40 and that, since apparently he transferred the obligations to petitioner in a nontaxable reorganization (section 112 (b) (3) and (g), Revenue Act of 1936), petitioner's basis would be the same as his, that is, $56,428.40. Thus, in any event, the amount to be included in equity invested capital would not be the face amount of the old obligations or any aliquot portion thereof. Petitioner's contention that the whole amount of the old obligations, including interest, amounting to $298,-758.27, is includible in equity invested capital is wholly unfounded.

It follows, of course, that if the old obligations were paid in for new stock and bonds, as it is stipulated, they could not have been paid in as "paid-in surplus, or as a contribution to capital."

Although the pleadings raise no question as to borrowed invested capital under section 719, the stipulation shows that the respondent has included in petitioner's borrowed invested capital 50 percent of the amount of the new bonds held by Marran for that portion of the taxable year in which they were outstanding.

On the facts as presented in the stipulation we find no error in respondent's determination of petitioner's invested capital or its excess profits tax liability for 1941.

Reviewed by the Court.

*Decision will be entered under Rule 50.*