## WEST CONSTRUCTION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9605. Promulgated October 16, 1946.

*C. Keefe Hurley, Esq.*, and *Samuel S. Dennis, Esq.*, for the petitioner.
*Paul P. Lipton, Esq.*, for the respondent.

OPPER, *Judge*: Laying aside other statutory conditions, this petitioner can not succeed unless the "indebtedness" it ran up in favor of the Government was evidenced by a "bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust." Only such debts are permissible inclusions to any extent in "equity invested capital" for excess profits tax purposes.[1]

When petitioner, working on War Department contracts, was granted credits by the Government in excess of amounts presently due it under the contracts, it executed no document technically answering to the statutory description. See *Journal Publishing Co.*, 3 T. C. 518. It is hence permissible to inquire whether its situation nevertheless falls within the purpose and scope of the legislation in order to ascertain whether the lawmakers intended to embrace such arrangements as the present one. See *Aetna Oil Co.* v. *Glenn* (Dist. Ct., W. Dist. Ky.), 53 Fed. Supp. 961.

Several considerations lead to the conclusion that the provision in question does not apply to petitioner. Underlying the whole plan of the statute is the assumption that invested capital may consist, not only of equity interests typically represented by stock, but of borrowed capital as well. Internal Revenue Code, secs. 717–719. But it is equally reasonable to infer that what was intended was an investment as to which the business in question assumes some risk. We must never lose sight of the fundamental purpose of the legislation, which was to establish a measure by which the amount of profits which were "excess" could be judged. Thus, capital funds placed at the risk of the business might be regarded as entitled to an adequate return. See *Economy Savings & Loan Co.*, 5 T. C. 543. But other items, not contributed by those participating in the venture and not in the nature of capital employed, were to be excluded.

We find in this concept an explanation of the restrictive character of the permissible evidence with which Congress surrounded the provision, and also of its plainly intentional omission of the phrase "or similar evidences of indebtedness" appearing in the original committee report on the section. *Flint Nortown Theatre Co.*, 4 T. C. 536. Added to this is the assistance to be derived from the provision dealing with those having foreign government contracts. The original version of section 719 (a) was, as petitioner asserts, enacted in 1940, prior

---

[1] SEC. 719. BORROWED INVESTED CAPITAL.

(a) BORROWED CAPITAL.—The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, * * *

to the entry of the United States into the war. But it was amended in 1942 (Revenue Act of 1942, sec. 205 (e)), without change in subsection (2), which limits the includible portion of "advance payments" as follows:

(2) In the case of a taxpayer having a contract (made before the expiration of 30 days after the date [Oct. 8, 1940] of the enactment of the Second Revenue Act of 1940) with a foreign government to furnish articles, materials, or supplies to such foreign government, if such contract provides for advance payment and for repayment by the vendor of any part of such advance payment upon cancellation of the contract by such foreign government, the amount [of borrowed capital shall include the amount] which would be required to be so repaid if cancellation occurred at the beginning of such day * * *.

This provision suggests three propositions: First, that in the legislative view "advance payments" would not be includible at all in the absence of specific language, as otherwise the whole paragraph would have been unnecessary, see *Gilbert* v. *Commissioner* (C. C. A., 1st Cir.) 56 Fed. (2d) 361, 362; second, that under the *"expressio unius"* rule relief in "advance payment" cases was intended to be confined to contracts made prior to the passage of the original legislation (or 30 days thereafter), see *Botany Worsted Mills* v. *United States*, 278 U. S. 282, presumably on the theory that it should not apply adversely to contracts already in existence or in immediate prospect; and, third, that it was never extended in any form to contracts with our own Government. This last element is perhaps best explained by an expansion of petitioner's reasoning. It points out that in 1940 war contracts were generally confined to foreign governments, since the rearmament program of the United States had then scarcely begun. To this we may add that such was not the case in 1942, when the section was again considered. But at all times the portion with which we are presently concerned was confined to pre-1941 contracts. There being none of consequence with our own Government, the original form of the provision sufficed on both dates. But, whatever the explanation, the fact remains that inclusion in borrowed capital of advance payments was limited both to pre-1941 contracts and to those made with foreign governments.

Looking now to the transactions between petitioner and the War Department, there seems little question that they fell into the general class with which this provision purported to deal. The language of both the relevant documents and the applicable regulations characterize the amounts in question as "advance payments." Granting that they may in some degree have aspects of indebtedness, they were carefully distinguished from ordinary loans,[2] at least to a sufficient

---

2 Cf. Executive Order No. 9001 (6 F. R. 6787), approved December 18, 1941, authorizing advance, progress and other payments," with Executive Order No. 9112 (7 F. R. 2367), approved March 26, 1942, authorizing guarantees of or participation in "loans, discounts, or advances" by financing institutions; see also War Dept. Procurement Reg. No. 3 (10 C. F. R. Cum. Supp., pp. 3284, *et seq.*) ; ¶320 "Guarantees, loans, and commitments under Executive Order No. 9112" and ¶321 "Advance payments."

extent to justify the application here of what we conceive to be the congressional purpose in dealing specifically with advance payments as such. Even the statutory reference to a provision "for advance payment and for repayment by the vendor of any part of such advance payment upon cancellation of the contract" is apt. It seems manifest that had section 719 (a) (2) been applied to post-1940 contracts with this Government, it would have included petitioner's case with neat precision. The converse can not but be equally true.

Taking the view that it was not within the legislative purpose to include the type of relationship here in controversy in the catalogue of transactions which could give rise to the existence of borrowed capital for purposes of section 719, we find no error in the contested deficiency.

Reviewed by the Court.

*Decision will be entered for the respondent.*