OPINION. HaRkon, Judge: Issue 1. — The question under the first issue, whether the advance payments received in the taxable year under the original and supplementary contracts with the United States Government constitute “borrowed capital” under the definition set forth in section 719 (a) (1) of the Internal Revenue Code,[1] requires a determination of whether there was an “indebtedness” of the petitioner “evidenced by a bond.” The statute contains its own definition of indebtedness, and the facts must show that the situation of the taxpayer comes within the definition. Journal Publishing Co., 3 T. C. 518, 522; Flint Nortown Theatre Co., 4 T. C. 536, 538. In construing the statute, we must follow the statutory definition of “borrowed capital.” The Congress restricted the definition of “borrowed capital” to an indebtedness evidenced by one of several stated documents which are written evidence of indebtedness. It has been held in the above cited cases that a narrow construction of the statute is required. The omission of a catch-all phrase, such as “any other written evidence of indebtedness,” has been held to be of significance. In this case, the situation serves to illustrate the point that the first emphasis in the statutory definition is the existence of a debt, and there is the additional requirement that the debt must be evidenced by some prescribed type of written evidence of a debt. Thus we think the most apt general definition to refer to here to illustrate the definition contained in section 719 (a) (1) is as follows: A “bond” is but a written evidence of a debt, whether in the hands of the original payee, or in the hands of some other person by proper transfer * * *. A “debt” is a sum of money which is certainly, and at all events, payable as a debt, without regard to whether it is payable presently or at a future time. [Words and Phrases, Permanent Ed., vol. 5, p. 653.] The contracts in question called for the payment of prices by the Government for articles delivered by the contractor. The contractor’s obligation was to make and deliver the goods. The Government’s obligation was to pay money for the goods, and that obligation included an agreement by the Government to pay not more than 30 per cent of the total contract price in advance. By the terms of the contract the payments with which we are concerned were advance payments under the contract, and not loans. The contractor, petitioner, made an agreement to guarantee an accounting for the sums advanced by the Government under a performance or advance payment bond, and the evident purpose was to keep the Government free from any loss on account of the advance payment. The guarantee of the contractor and the performance bond were part of the entire contract to make and deliver goods. If the contractor, petitioner, well and truly performed all of his undertakings under the contract to make and deliver goods, then the obligation under the bond to pay a “penal sum” to the Government would be void. Such guarantee to perform the contract or to pay a penal sum was not the giving of a “bond” to evidence an “indebtedness” as provided in section 719 (a) (1), in our opinion. Petitioner relies upon the performance or advance payment bond as evidence of the existence of an indebtedness to the Government, in its contention that the advance payments constituted “borrowed capital.” The argument fails to give due consideration to the fact that the giving of the performance bond was part of the entire contract, and, while the bond was a separate document, it was only evidence of a penalty to be paid for failure to perform under the contract. We think the obligation of petitioner to perform under the contract and the giving of the performance bond were interrelated, and that the advance payments in question had no other character than payments on account of the contract purchase price, which were not to be returned to the Government unless goods for which the advance payments were consideration, were not delivered under the contract. While the advance payments could have taken on the character of sums repayable, in the event of the contractor’s failure to perform his obligation to make and deliver goods, they were not ordinary loans, and, in our opinion, did not give rise to “outstanding indebtedness” as that term is used in section 719 (a) (1). It is held, therefore, that respondent did not err in determining that no part of the advance payments was includible in invested capital as “borrowed capital.” See West Construction Co., 7 T. C. 974. Issue 2. — Respondent determined that $10,200 was a reasonable allowance for petitioner’s president’s salary for purposes of deductible business expense under section 23 (a) (1) (A), and he disallowed $8,000 of the deduction taken on the return. Such allowance was not only less than the salary paid in prior years, and allowed, $10,400, but did not provide compensation for the increased services of petitioner’s president in the taxable year. It has been found as a fact that $18,200 is a reasonable allowance for the president’s salary; and it is held that such amount is deductible. This determination is reversed. Decision will be entered under Rule 50. SBC. 719. BORROWED INVESTED CAPITAL. (a) Borrowed Capital. — The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following: (1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust * * *