OPINION. Arundell, Judge: Here we have a somewhat different facet of the basic problem involved in Canister Co., 7 T. C. 967, and West Construction Co., 7 T. C. 974, that is, whether advance payments on Government contracts may be considered a part of the contractor’s borrowed capital within the meaning of section 719 of the Internal Revenue Code[1] for purposes of computing the excess profits credit based on invested capital. In the Canister case there were contracts with the Navy Department and in the West Construction Co. case, with the War Department. In this case the contracts were with the Defense Plant Corporation, likewise an instrumentality of the "United States Government. The petitioner makes an earnest effort to distinguish those cases, and it may be conceded that there are some factual differences; some differences, for example, in the mechanics of carrying out the respective transactions. It is urged that the advance payments on the six DPC purchase orders here involved amount to loans. And then it is contended that the purchase orders themselves and the checks issued for the advance payments qualify either as notes, bills of exchange, debentures, or mortgages — the types of evidence of indebtedness specified in the statute. This latter question we need not reach unless it first be determined that the advance payments constitute outstanding indebtedness within the scope and purpose of the statute. The six purchase orders which petitioner accepted from DPC covered a large number of machine tools and provided in terms for the advance payment by DPC of 30 per cent of the total contract price of the machines. DPC was authorized under its enabling legislation and its charter to acquire critical war materials, plants, and equipment, and to use, lease, or otherwise arrange for the use of such plants and facilities for war production. It was not engaged in the business of making loans — a function which belonged to its parent, the RFC. In making advance payments on critical machines and equipment ordered by it, it was doing what it was created and authorized to do. See section 5d (3), (4), ^Reconstruction Finance Corporation Act, as amended, 15 U. S. C. § 606b (3), (4). The purchase orders provided that petitioner should make efforts through its own sales organization to sell the machines to others approved by the Government agency having charge of priorities and upon such sales to repay to DPC the moneys advanced by it on those machines. DPC was obligated to take any machines covered by the orders which were not thus sold. Petitioner’s position is that, with the exception of six machines which it sold direct to DPC or to DPC agents and an undisclosed number of machines sold by it to the War and Navy Departments, its regular dealers sold the machines to their customers; that petitioner sold the machines to its dealers in the first instance and it was not concerned with what the dealers thereafter did with the machines; that it had nothing to do with the transactions between its dealers and their customers. Actually, however, the respondent’s evidence shows that in typical instances of such sales by the petitioner’s dealers DPC was the ultimate purchaser of the machines; that it held title to the machines and leased them! to manufacturers of war materials for a nominal rental. But, in any event, we are not prepared to say that, even if others than DPC and the War and Navy Departments were the ultimate purchasers and owners of some of the machines, that fact would serve to convert into loans what were advance payments against the purchase price of the machines. In West Construction Co., supra, we held that what Congress had in mind in making allowance for borrowed capital was capital as to which the business assumes some risk. Here, we are unable to conclude that petitioner assumed any risk whatever with respect to the advance payments. It stood to lose nothing. If risk there was, it would seem to be a risk assumed by DPC rather than by petitioner. We also observed in the West case that the fact that Congress in section 719 (a) (2) had made specific provision for the allowance of borrowed capital credit in the case of advance payments on certain contracts with foreign governments and nowhere made any reference to such payments on contracts with our own Government, was indicative of a purpose to exclude the latter from the scope of borrowed capital. That same reasoning applies with equal force in this case. Basically, the purchase orders here involved were United States Government contracts and the moneys in question were advance payments thereon. Such payments do not partake of the character of indebtedness to any greater degree than those involved in the West case. In one respect, at least, the facts in that case would seem to be even more favorable to the taxpayer’s position than are the facts here. There the contractor paid a regular rate of interest to the War Department on its advance payments. We conclude that, despite some factual differences, the principles of the West case govern here and that petitioner is not entitled to include the advances in its borrowed capital. There remains the question whether the advance payments should play any part in the computation of petitioner’s credit for debt retirement under section 783 of the code.[2] That section differs slightly from section 719 with respect to the type of evidence of indebtedness required. However, the first step in this instance, as in the other, is to determine whether the advance payments amounted to “indebtedness” within the meaning of the statute. On brief, petitioner advances the same arguments on this point under both sections, and we see no good reason why the scope of the term “indebtedness” should be any different in the one section than in the other, so far as the present problem is concerned. We therefore hold that no account should be taken of the advance payments in computing petitioner’s credit for debt retirement. Decision will be entered/ under Bule 50. SEC. 719. BORROWED INVESTED CAPITAL. (a) Borrowed Capital. — The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following: (1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, plus, (2) In tjie case of a taxpayer having a contract (made before the expiration of 30 days after the date of the enactment of the Second Revenue Act of 1940) with a foreign government to furnish articles, materials, or supplies to such foreign government, if such contract provides for advance payment and for repayment by the vendor of any part of such advance payment upon cancellation of the contract by such foreign government, the amount which would be required to be so repaid if cancellation occurred at the beginning of such day, but no amount shall be considered as borrowed capital under this paragraph which has been includible in gross income, plus, *»*«*»* (b) Borrowed Invested Capital. — The borrowed invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be an amount equal to 50 per centum of the borrowed capital for such day. SEC. 783. CREDIT FOR DEBT RETIREMENT. (a) General Rule. — An amount equal to 40 per centum of the amounts paid during the taxable year in repayment of the principal of indebtedness shall, at the election of the taxpayer made in its return for such year, be allowed as a credit against the tax for such year imposed by this subchapter. *•*••*• (d) Definition of Indebtedness. — For the purposes of this section the term “indebtedness” means any indebtedness of the taxpayer or for which the taxpayer is liable evidenced by a bond, note, debenture, bill of exchange, certificate, or other evidence of indebtedness, mortgage, or deed of trust.