DOYLESTOWN AND EASTON MOTOR COACH COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10101. Promulgated October 30, 1947.

*Albert Barnes Zink, Esq.*, for the petitioner.
*Robert H. Kinderman, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The Commissioner determined a deficiency of $24,421.81 in excess profits tax for 1942. He explained:

The sum of $141,418.93 claimed by you to represent a contribution to capital in the year 1932, and claimed by you as a part of your equity invested capital for the year 1942, has been disallowed.

The only assignment of error is that the Commissioner erred in determining the credit for excess profits tax for 1942 by excluding "paid-in surplus in the sum of $141,418.93." The facts have been stipulated.

The petitioner was incorporated under the laws of Pennsylvania in February 1926. Its capital stock of the par value of $20,000 was issued for cash at that time. The petitioner held a certificate of public convenience (also referred to as a franchise) for the operation of a bus line between Doylestown and Easton in Pennsylvania.

Philadelphia Rural Transit Co., hereinafter referred to as Rural, entered into a contract with the petitioner dated September 30, 1927, providing that Rural should operate buses over the petitioner's line between Doylestown and Easton in conjunction with a line then being operated by Rural between Philadelphia and Doylestown. Rural was to supply all personnel and equipment. Rural and the petitioner were to share expenses and profits in proportion to the miles operated under the franchises of each. Rural was to deduct the petitioner's share of the operating expenses from the gross revenues, but if the gross revenues were insufficient, then the petitioner was to reimburse Rural for any deficiency. The agreement was to remain in effect for one year, and thereafter from year to year unless terminated by notice.

The operation resulted in a loss to the petitioner for every year through 1932. The petitioner was indebted to Rural in the amount of $141,418.93 on December 31, 1932, representing the accumulated yearly operating deficits.

The balance sheet of the petitioner as of December 31, 1932, was as follows:

| Assets | | Liabilities | |
|---|---|---|---|
| Cash | $3,373.21 | Accounts payable | $141,418.93 |
| Accounts receivable | 66.47 | Capital stock | 20,000.00 |
| Fixed assets | 12,687.03 | Surplus (deficit) | (145,292.22) |
| Total | 16,126.71 | Total | 16,126.71 |

Rural was a wholly owned subsidiary of the Philadelphia Rapid Transit Co., hereinafter referred to as Rapid, during the years 1927 through 1933. The record does not show in whose name the stock of the petitioner stood during that period, but the petitioner, Rural, and Rapid were members of an affiliated group entitled to file consoli-

dated returns, and consolidated returns were filed by Rapid in which the petitioner and Rural were included for each of the years 1928 through 1932. The petitioner sustained a net operating loss of $9,861.70 for 1927. It filed a separate return for that year, but the operating loss of 1927 was allowed as a deduction in calculating the consolidated net income of Rapid and its affiliates for the year 1929. Rapid filed a consolidated return for 1933 in which Rural was included and in which the petitioner was included for the months of January and February. The operating losses of the petitioner for January and February 1933 amounted to $3,918.49, so that the petitioner at the end of February 1933 owed Rural $145,337.42.

Rapid entered into an agreement on November 7, 1932, with W. W. Meirs, which recited that Rapid "has the beneficial interest of all of the outstanding shares" of the petitioner. It agreed to sell and Meirs agreed to buy those shares. The agreement between the petitioner and Rural was to be terminated. Certain real and personal property, cash, and accounts receivable of the petitioner were to belong to Rapid when Meirs should begin to operate the petitioner, and all liabilities incurred by the petitioner which had accrued up to that time were to be borne by Rapid.

All of the assets on the balance sheet of the petitioner as of December 31, 1932, were taken over by Rapid on February 28, 1933, and none of the items on that balance sheet appear on the books of the petitioner after February 28, 1933, except capital stock, which was carried at all times on the books of the petitioner at $20,000. Other items appearing on the books of the petitioner after February 28, 1933, arose by reason of the operation of the petitioner by Meirs.

"At all times the franchises owned by the petitioner remained the property of the petitioner whether or not reflected on its books."

Rapid caused the following entries to be made in the journal of the petitioner at the close of February 1933 to eliminate the amount of $145,337.42 from its books:

| | Dr. | Cr. |
|---|---|---|
| Other Accounts Payable | | |
|     Rural Transit Company | $145,337.42 | |
| To | | |
|     Surplus | | $141,418.93 |
|     Joint Facilities Rent | | 3,918.49 |

(To clear from books the amount due Rural from operation of line)

A credit entry was made on the books of Rural in the account receivable from the petitioner in the amount of $145,337.42 as of February 1933, to eliminate that account from the books of Rural. The offsetting debit entries were a debit to surplus in the amount of $141,418.93 and a debit of $3,918.49 to joint facilities rent account. The account receivable from Rural on the books of Rapid was credited

with $145,337.42 as of May 31, 1933. The offsetting debit entries on the books of Rapid were a debit of $141,418.93 to profit and loss and $3,918.49 to miscellaneous debits. The account payable to Rapid on the books of Rural was debited $145,337.42 in May 1933. The offsetting credit entries on the books of Rural were $141,418.93 to surplus and $3,918.49 to joint facilities rent.

The following entries appear in the reconciliation of surplus statement as of December 31, 1933:

| | Philadelphia Rapid Transit Co. | Doylestown & Easton Motor Coach Co. |
|---|---|---|
| DEBITS: | | |
| Loss from operation of Doylestown & Easton Motor Coach Co. to Dec. 31, 1932 | $141,418.93 | |
| Surplus debits on books of Doylestown & Easton Motor Coach Co. absorbed by Philadelphia Rapid Transit Co | | $3,733.63 |
| CREDITS: | | |
| Loss from operation of Doylestown & Easton Motor Coach Co. transferred to P. R. T. Co | | 141,418.93 |

The $141,418.93 was not claimed as a bad debt or claimed as a deduction from net income in the consolidated income tax return filed by Philadelphia Rapid Transit Co. for the year 1933.

Equity invested capital is defined in section 718 (a) (2) to include property (other than money) paid in for stock, as paid-in surplus, or as a contribution to capital, and such property is to be included "in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange." The petitioner relies upon that provision rather than upon any other provision of section 718 (a). It contends that Rapid was the holder of its stock; Rapid assumed the indebtedness due from the petitioner to Rural and forgave that indebtedness so far as the petitioner was concerned; the forgiveness represented a contribution of property to the capital of the petitioner by its stockholders; the debt was property in the hands of Rural and in the hands of Rapid, having a basis for loss to them of the full amount of the indebtedness; and that basis must be included in computing the petitioner's equity invested capital under section 718 (a) (2).

An account receivable is property belonging to the creditor. It can have a basis for gain or loss in his hands or, if he transfers it, in the hands of a third party. However, where a debtor-creditor relationship between affiliates is the result of operating losses of one being paid by the other, which losses have been deducted from group income on consolidated returns, the basis of the creditor for gain or loss on the indebtedness must be reduced by the amount of the losses of the debtor which have offset income on the consolidated returns. If the creditor were allowed to use the full amount of the indebtedness as basis, as,

for example, in connection with a claimed deduction for a bad debt, for the computation of gain or loss upon the disposition of the indebtedness, or in any other way, a double deduction for the same losses by a member or members of the affiliated group would result. Congress never intended such a result. *Gould Coupler Co.*, 5 B. T. A. 499, 518; *Edward Katzinger Co.*, 44 B. T. A. 533; affd., 129 Fed. (2d) 74; *Bush Terminal Buildings Co.*, 7 T. C. 793; *Eljer Co.* v. *Commissioner*, 134 Fed. (2d) 251; *Charles Ilfeld Co.* v. *Hernandez*, 292 U. S. 62. Cf. *George Hall Corporation* v. *Shaughnessy*, 67 Fed. Supp. 748. The petitioner has relied upon statutory provisions and regulations which were not intended to apply and are not appropriate in the case of property consisting of a debt due from one affiliate to another as the result of operating losses of a member of the affiliated group. The stipulation in the present case shows that the debtor-creditor relationship between the petitioner and Rural resulted from the unsuccessful operation by Rural of buses under the petitioner's franchise, while the petitioner, Rural, and Rapid all belonged to the same affiliated group for which consolidated returns were filed. The petitioner, by failing to show the extent to which the losses of the petitioner were used to offset income on consolidated returns, has failed to show what Rural's or Rapid's basis for loss was on the indebtedness and has failed to show that it was greater than zero. It suggests that this burden was on the respondent, but the law is otherwise. The basis referred to in section 718 (a) (2) is the basis to the petitioner rather than to the transferor. Regulations 112, sec. 35.718–1; *George Hall Corporation* v. *Shaughnessy, supra*. However, under the petitioner's theory, its basis would be the same as, or less than, that of the transferor. Sec. 113 (a) (2), (8) (B), or (11). Thus, the petitioner has failed to sustain its own argument by proper proof.

It is not clear that the forgiveness of an indebtedness could ever come into equity invested capital under section 718 (a) (2). When a debt is settled or forgiven, it is extinguished and is not property in the hands of the debtor even for a moment. Cf. *Hale* v. *Helvering*, 85 Fed. (2d) 819, affirming 32 B. T. A. 356. His liability has disappeared, but he has no asset represented by the extinguished debt. A nonentity can not have a basis for loss upon sale or exchange within the meaning of those terms as used either in section 718 (a) (2) or in section 113 (a). It is idle to speak of a nonentity being sold or exchanged or having any basis for such a purpose. If the indebtedness, after being extinguished, did not have any basis in the hands of the petitioner, it would not be a factor in computing the petitioner's invested capital under section 718 (a) (2).

It is unnecessary to discuss the petitioner's contention further or to decide whether or not there are any other defects in the arguments which it has advanced in support of its contention for an increase in equity invested capital over the amount determined by the Commissioner.

*Decision will be entered for the respondent.*