CREAN BROTHERS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19731. Promulgated December 18, 1950.

*Thorpe Nesbit, Esq.,* for the petitioner.
*John A. Newton, Esq.,* for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $14,434.23 in the excess profits tax of the petitioner for 1945. The only issue for decision is whether the Commissioner erred in excluding from equity invested capital for the years 1943, 1944, and 1945, $99,965.05 alleged to represent paid-in surplus or a contribution to capital, resulting from the forgiveness of an indebtedness in 1938. The facts are not in dispute and a written stipulation, supplemented by all exhibits introduced in evidence, is adopted as the findings of fact.

The petitioner, a Pennsylvania corporation engaged in the retail anthracite coal business, filed its excess profits tax return for 1945 with the collector of internal revenue for the first district of Pennsylvania.

Middle Atlantic Anthracite Corporation owned 77.3 per cent of the outstanding stock of the petitioner during 1938. Hudson Coal Co.,

hereafter called Hudson, owned 51 per cent, and Foedisch Coal Co., hereafter called Foedisch, owned 49 per cent of the outstanding capital stock of Middle Atlantic during and prior to 1938. Hudson mined and produced anthracite coal and Foedisch sold anthracite coal at wholesale.

The petitioner was indebted to Foedisch as of November 30, 1938, in the amount of $317,634.50 for anthracite coal purchased and Foedisch was indebted to Hudson at that time, in the amount of $303,151.15 for coal purchased and resold to the petitioner. Foedisch, on or about December 29, 1938, assigned to Hudson $99,965.05 of the amount due it from the petitioner in consideration of the cancellation by Hudson of a like amount of the indebtedness due it from Foedisch. Hudson, on that same day, wrote a letter to the petitioner mentioning that a part of its indebtedness to Foedisch had been assigned to Hudson and stating: "In view of the financial position of Crean Brothers, Incorporated, and to aid your Company in continuing in business on a reasonable basis, this is to advise that The Hudson Coal Company is cancelling the amount of this indebtedness, viz. $99,965.05."

The petitioner debited $99,965.05 to its accounts payable and credited the same amount to surplus. Hudson debited surplus and credited the petitioner with $99,965.05 and recorded the following explanation:

To charge to Surplus, with contra credit to Crean Brothers, Inc., an amount of $99,965.05 on account of coal bills due from Crean Brothers, Inc. The financial position of Crean Brothers, Inc. indicates that the collection of this account is unlikely. See correspondence in file 220.11.

The three corporations never filed consolidated Federal tax returns.

The petitioner did not report the amount of the debt cancellation as income in 1938 and Hudson did not claim a deduction based upon the cancellation. Both corporations reported operating losses for 1938. That of Hudson was substantially in excess of the amount of the canceled debt while that of the petitioner was $33,120.67. The 1938 return of the petitioner showed, at the end of the year, $303,623.09 in assets, $200,000 capital stock, and a deficit of $157,515.72 after the cancellation of debts in the amount of $99,965.05.

The Commissioner, in determining the deficiency, did not include the $99,965.05 in equity invested capital.

Section 718 is, in part, as follows:

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

(1) MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

(2) PROPERTY PAID IN.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange.

The petitioner claims that the $99,965.05 represents paid-in surplus or a contribution to capital. The account receivable from the petitioner, as the petitioner recognizes, was property in the hands of Hudson until canceled. *Walsh Holyoke Steam Boiler Works, Inc.* v. *Commissioner*, 160 Fed. (2d) 185, affirming 5 T. C. 814; *Doylestown & Easton Motor Coach Co.*, 9 T. C. 846, 850. The amount did not represent money which had previously been paid into the petitioner and it was, in no sense, the equivalent of money. The record does not indicate that it had any value. It was the amount due for coal produced by Hudson and sold, through Foedisch, to the petitioner for sale at retail. Since the account receivable, which Hudson is said to have contributed by the cancellation, was property rather than money, the petitioner must make its claim under section 718 (a) (2) rather than under section 718 (a) (1). The cancellation of the indebtedness wiped out an existing insolvency and a part of a capital impairment on the financial statement. It did not create any surplus and it did not eliminate all of the capital impairment. Hudson did not own any stock of the petitioner. One not a stockholder may contribute to the capital of a corporation. *Brown Shoe Co.* v. *Commissioner*, 339 U. S. 583; *Commissioner* v. *McKay Products Corporation*, 178 Fed. (2d) 639, certiorari denied 339 U. S. 961. Nevertheless, the cancellation of indebtedness can not increase the equity invested capital of a debtor corporation under section 718 (a) (2), even assuming that it represents a contribution to capital, since the property paid in or contributed is includible in equity invested capital under section 718 (a) (2) only "in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange." A debt, when canceled, ceases to exist and the former debtor is not in receipt of any property which can have a basis in his hands for gain or loss regardless of how the cancellation came about or of the basis the debt had in the hands of the creditor. We said in *Doylestown & Easton Motor Coach Co.*, *supra*:

It is not clear that the forgiveness of an indebtedness could ever come into equity invested capital under section 718 (a) (2). When a debt is settled or forgiven, it is extinguished and is not property in the hands of the debtor even for a moment. Cf. *Hale* v. *Helvering*, 85 Fed. (2d) 819, affirming 32 B. T. A. 356. His liability has disappeared, but he has no asset represented by the extinguished debt. A nonentity can not have a basis for loss upon sale or exchange within the meaning of those terms as used either in section 718 (a) (2) or in section 113 (a). It is idle to speak of a nonentity being sold or exchanged or having any basis for such a purpose. If the indebtedness, after being extinguished, did not have any basis in the hands of the petitioner, it would not be a factor in computing the petitioner's invested capital under section 718 (a) (2).

The petitioner has no basis, adjusted or otherwise, for determining loss upon sale or exchange of its former debts canceled by Hudson

and its equity invested capital was not increased by the cancellation.

This result is consistent with the purpose of section 718 (a) which was, in general, to include in invested capital for any day the assets theretofore invested in and put at the risk of the business and money earned and left in the business. *West Construction Co.*, 7 T. C. 974. Money or property once paid in for shares remains in equity invested capital even though lost. Here the operations of the petitioner had been unsuccessful. Its capital had been wiped out and it was insolvent. A producer of coal, which found an outlet for its product through the petitioner, concluded that the petitioner would probably be unable ever to pay the $99,965.05 which it owed to the wholesaler for a part of that coal and decided to obtain and then cancel the indebtedness so that the petitioner might continue in business. The cancellation improved the financial statement of the petitioner so that where before the cancellation the petitioner was insolvent, afterwards it was solvent and its capital was only partially impaired. "But under section 718, financial statement improvements do not as such augment equity invested capital * * *." *Walsh Holyoke Steam Boiler Works, Inc.* v. *Commissioner, supra*. A part of its liabilities disappeared. It is not shown that the creditor contributed anything of value. No new money or assets came to the petitioner as a result of the cancellation. No surplus was created and, if there was any contribution to capital, it, at most, made up only a part of an impairment in capital, all of which capital was already represented in equity invested capital. This petitioner, after the cancellation, still did not actually have the working capital with which it started in business and upon which its excess profits tax credit, exclusive of any additional credit for the debt cancellation, is based. Congress, in such a case, did not intend to regard as normal earnings on invested capital any more than 8 per cent on its original capital. The Commissioner did not err in failing to include the amount here in controversy in equity invested capital.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

LeMire, *J.*, dissenting: I am unable to agree with the majority holding that the cancellation of petitioner's indebtedness by Hudson did not result in an increase of petitioner's equity invested capital.

The courts have consistently recognized the cancellation of indebtednesses by stockholders as contributions to the debtors' capital. Although Hudson was not directly a stockholder of petitioner, it owned 51 per cent of the stock of Middle Atlantic which in turn owned 77.3 per cent of petitioner's stock. This indirect ownership

by Hudson of a majority interest in petitioner is given no weight in the majority opinion.

The Supreme Court in *Helvering* v. *American Dental Co.*, 318 U. S. 322 said:

\* \* \* Where a stockholder gratuitously forgives the corporation's debt to himself, the transaction has long been recognized by the Treasury as a contribution to the capital of the corporation. Regulations 45, Art. 51, through to Regulations 94, Art. 22(a)-14. *Commissioner* v. *Auto Strop Safety Razor Co.*, 74 F. 2d 226. [To the same effect is sec. 29.22 (a)-13 of Reg. 111.]

Judge Learned Hand, speaking for the Circuit Court of Appeals for the Second Circuit in *United States* v. *Oregon-Washington R. & Nav. Co.*, 251 Fed. 211, said:

Now, it seems to us hardly arguable that the cancellation of the debt in question was not in the category of capital. The corporation had just commenced its business; the cancellation of the debt was a means of contribution to its capital account, quite as though the money had been contributed by the stockholder only to enhance the value of his stock. \* \* \*

See also *Commissioner* v. *Auto Strop Safety Razor Co.*, 74 Fed. (2d) 226, and *Carroll-McCreary Co.* v. *Commissioner*, 124 Fed. (2d) 303, in which the same court of appeals applied the above principles and regulations in recognizing additions to capital through the cancellation of indebtedness; *Walsh Holyoke Steam Boiler Works, Inc.* v. *Commissioner*, 160 Fed. (2d) 185, in which the Circuit Court of Appeals for the First Circuit noted at page 188 that:

\* \* \* The Tax Court assumed, we think correctly, that a corporation's obligations, when turned in for stock, may be regarded as "property" within the meaning of § 718 (a) (2). But in that view, this "property" is included in equity invested capital "in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange." Since the recapitalization would constitute a tax-free reorganization, the "property" would be carried into the corporation's equity invested capital at the transferring-bondholders' basis \* \* \*

and *George Hall Corporation* v. *Shaughnessy*, 67 Fed. Supp. 748, in which the District Court of the United States for the Northern District of New York, relying upon the above cases, held that the forgiveness of indebtedness constituted a contribution to capital.

This Court has repeatedly recognized that there is an addition to equity invested capital where a corporation issues capital stock against its indebtedness and where the circumstances show a purpose on the part of the creditor to make an additional contribution to the debtor corporation's capital and to increase his investment in the business. *The Parisian*, 2 B. T. A. 415; *Charles F. L'Hommedieu & Sons Co.*, 6 B. T. A. 41; *Cohn-Goodman Co.*, 7 B. T. A. 475; *Harry Sherin*, 13 T. C. 221. There is no question, on the evidence, but that Hudson intended to make a contribution to petitioner's capital so that petitioner could continue in business.

The majority opinion seems to put considerable reliance upon *Doylestown & Easton Motor Coach Co.*, 9 T. C. 846. In that case the debtor-creditor relationship grew out of the payment by one corporation of an affiliated group of the operating losses of another of the group. Since the operating losses had been fully deducted in consolidated returns filed by the group, we held that the indebtedness had no basis in the hands of either the creditor or, when forgiven, the debtor. We have no such situation here. The respondent does not contend that the indebtedness in question did not have a basis in the hands of the creditor, Hudson, equal to its full amount.

The situation here, as we see it, is the same as if Hudson had given petitioner $99,965.05 in cash to apply on its indebtedness to Foedisch, not as a loan but for the purpose of improving petitioner's capital account. Unquestionably, the amount so contributed to petitioner would have gone into its invested capital as "a contribution to capital" under section 718 (a), Internal Revenue Code, and there would be no problem of a "basis" for the forgiven indebtedness.

ARUNDELL and JOHNSON, *JJ.*, agree with this dissent.