**CURTIS v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 10037.**

United States Court of Appeals, Seventh Circuit.

June 27, 1950.

Charles B. Heinemann, Jr., Washington, D.C., for petitioner.

Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, A. F. Prescott, Virginia H. Adams, Special Assistants to the Attorney General, for respondent.

Before KERNER, DUFFY, and FINNEGAN, Circuit Judges.

KERNER, Circuit Judge.

The petitioner seeks a review of the decision of the Tax Court determining a deficiency in his income tax for the year 1943. Petitioner prepared his returns on a cash calendar-year basis. He was a partner in a brokerage firm which was established by an agreement dated December 31, 1940. Each of the partners contributed to the business the use of a stock exchange membership as well as substantial capital. Pursuant to the agreement, each partner was entitled to interest on the amount of his capital account; net profits, determined after deducting the interest payments, were to be shared equally. Net losses, however, were to be borne solely by petitioner, who also guaranteed to the other partners certain minimum drawing accounts, even if their shares of net profits were insufficient, and such payments were to be borne by petitioner.

On December 15, 1941, a supplemental agreement was executed and three new partners were added. Two of these contributed capital and the use of stock exchange memberships which, as with the others, was considered a capital contribution. The third new partner, however, made no capital contribution. As in the first agreement, it was provided that all net losses were to be borne by petitioner, and the drawing accounts were to be charged against each partner's interest in the net profits, whether or not there were sufficient net profits to meet the established minimums.

On May 12, 1942, the partners entered into still another agreement, modifying their earlier agreements to the effect that in the event any loss should be sustained by petitioner in the conduct of the partner-

ship business during the year 1942, including any net loss resulting from the operation of the business which was borne by petitioner, and any loss sustained by him in making up to his partners their several drawing accounts, and in the event the partnership should be continued beyond and after December 31, 1942, the net profits earned during the operation of the business beyond and after December 31, 1942, should be first applied in payment of petitioner's losses, if any, incurred by him during 1942, before any net profits should be distributable to the respective partners, and only that portion of the net profits remaining after making up said losses should be distributed among the partners.

For the year 1942 the net profits of the partnership did not equal the interest due the partners on their capital balances and their guaranteed drawing accounts, and petitioner was obliged to and did pay his partners the difference. In his income tax return for 1942 he deducted as a loss the amount so paid. In 1943 the partnership had profits, and petitioner recovered the amount that he had deducted as a loss in his 1942 return. He also received $13,687.50 for interest on his capital account, and $8,790.89 as his share of the net operating profits. The partnership return for 1943 included the above items in the amount distributed to petitioner for a total of $56,377.38. Petitioner's return for 1943 included in addition to the interest and profit, $14,205.75 of the recovered loss of 1942.

The Commissioner of Internal Revenue increased petitioner's income from the partnership for 1943 by $19,693.24, that being the difference between petitioner's distributive share as reported on the partnership return and the amount reported as income from the partnership, and made

a deficiency assessment of $18,039.87. The Tax Court agreed with the Commissioner and held that since petitioner's loss was reportable in 1942, his total distributable share of the partnership profits in 1943 was includible in his income for that year.

In the view we take of this appeal, we need only to discuss the question whether the payment by petitioner in 1942 of the operating loss of the partnership constituted a loss properly deductible in that year. Petitioner apparently agrees, since in his brief he says: "If, as respondent argues, the money paid out in 1942 was a loss in the eyes of the law, then the repayment must be included as income in 1943."

In this court petitioner contends that the Tax Court erred in holding that a deductible loss was sustained in 1942. He argues that the payments to the partners were advances; that there was no closed and completed transaction in 1942, and some right of reimbursement continued to exist under the terms of the partnership agreement as long as the agreement of May 12, 1942 remained in effect and the contingencies therein set forth continued to operate so that a reasonable possibility of recovery existed. In support of his argument he calls attention to § 23(e) of the Revenue Act,[1] and cites a number of cases which stand for the principle that the loss for which an amount may be deducted from gross income must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable year, but he relies principally on Cohan v. Commissioner, 11 B.T.A. 743, affirmed. 2 Cir., 39 F.2d 540.

We think the case of Cohan v. Commissioner is distinguishable on the facts. In that case Cohan, under an agreement separate and distinct from the partnership

---

1. Section 23(e), 26 U.S.C.A. provides: "In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(e) Losses by Individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) If incurred in trade or business; or

\* \* \* \* \* \*

"(k) [As amended by § 124(a) of the Revenue Act of 1942] Bad debts.

(1) Debts which become worthless within the taxable year; \* \* \*"

agreement between him and Harris, advanced to Harris $150,000 under a contract which referred to the amount advanced as a loan which was to be repaid by Harris out of theatre earnings. True it is, that Cohan and Harris were partners and that Harris was to repay the $150,000 out of the profits of the theatre, and there was no personal obligation to repay, but the fact yet remains that the money advanced was a loan. Such is not the situation here.

■■■ Under § 42 of the Internal Revenue Code, as amended by § 114, Revenue Act of 1941, 26 U.S.C.A. § 42, where a taxpayer is on a cash basis, all items of gross income are includible in the gross income for the taxable year in which received by the taxpayer. Section 41 provides that net incomes shall be computed upon the basis of the taxpayer's annual accounting period, in accordance with the method of accounting regularly employed by him. And § 43 provides that deductions shall be taken for the taxable year in which paid.

In our case, as we have already noted, petitioner and his partners operated under agreements which required that if the net profits were insufficient to pay the minimum drawing accounts, the deficiency would be "borne absolutely" by petitioner. This provision has never been changed. However, in the middle of the first taxable year involved, the partners agreed that if future income was sufficient, petitioner would be entitled to receive out of such future income, before profits were distributed, any losses incurred by him in 1942 in paying the drawing accounts. This was not an outright agreement that petitioner should be reimbursed. It amounted to nothing more than a readjustment of the percentage of participation by petitioner and his associates in the net profits. The requirement that losses be deducted in the year in which they are sustained calls for a practical test. The loss must be actual and present. Commissioner v. Highway Trailer Co., 7 Cir., 72 F.2d 913, 914. Here, no one questions but what the amounts of the drawing accounts in 1942 constituted an operating loss of the partnership which petitioner was obliged to bear in the same manner that he was obligated to bear any other operating loss of the partnership. The loss was actual and present, hence, as of December 31, 1942, petitioner had no enforceable right against anyone for reimbursement for his 1942 partnership loss. All he had was the chance of recouping the losses out of future profits. Here there is no evidence that at the end of 1942 the firm's income had increased to such an extent that there was a probability of petitioner recovering his losses, and when it is considered that each partner was to receive interest on his investment before any profits were to go to repay petitioner, it is clear that the possibility, at the end of 1942, of recoupment by petitioner in 1943 remained in the realm of conjecture. True, petitioner was not required to prove beyond imaginable peradventure that no recoupment was possible, nevertheless, speculative chances of repayment furnish no basis for delaying the taking of a loss. Young v. Commissioner, 2 Cir., 123 F.2d 597, and Clark v. Welch, 1 Cir., 140 F.2d 271. Moreover, the question of the year in which a loss is sustained is one of fact as to which the decision of the Tax Court must be upheld unless clearly erroneous. Hall v. Commissioner, 7 Cir., 128 F.2d 180, 182; Superior Coal Co. v. Commissioner, 7 Cir., 145 F.2d 597, 599; and Belser v. Commissioner, 4 Cir., 174 F.2d 386, 389.

■■■ The federal income tax system is based on an annual accounting. Under that law the question whether taxable profits have been made is determined annually by the result of the operations of the year. Heiner v. Mellon, 304 U.S. 271, 275, 58 S. Ct. 926, 82 L.Ed. 1337. See also Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725; Freihofer Baking Co. v. Commissioner, 3 Cir., 151 F.2d 383; and Bartlett v. Delaney, 4 Cir., 173 F.2d 535. In accordance with this rule, petitioner, in his income tax return for 1942, deducted the amount he was obliged to bear in the operation of the partnership business. In this situation, we are impelled to the conclusion that the Tax Court correctly held that petitioner's loss was reportable in 1942 and that his total distributable share of the partnership profits in 1943 was

includible in his income for that year. To hold otherwise would be to allow him to level off his taxable income in a high income year by taking a deduction not applicable to that year. This, in the case of Burnet v. Sanford & Brooks Co., 282 U.S. 359, 364, 51 S.Ct. 150, 75 L.Ed. 383, we have been specifically told may not be done.

The decision of the Tax Court is affirmed.