*Decision will be entered under Rule 50.*

AKELEY CAMERA & INSTRUMENT CORP. (FORMERLY AKELEY CAMERA, INC.), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31390. Promulgated September 19, 1952.

George R. Sherriff, Esq., for the petitioner.
Joseph F. Lawless, Esq., for the respondent.

1048

1050

1052

## OPINION.

BLACK, *Judge:* There are six issues raised in this proceeding and they have already been stated in our preliminary statement.

### Issue 1.

The respondent determined that $8,200 of $18,200 annual salary received by Mrs. Malone in 1942 and 1943 is unreasonable salary and should not be allowed as a deduction. The development of petitioner's business and Mrs. Malone's position have been traced in considerable detail in our Findings of Fact. After consideration of all the evidence, we found as an ultimate fact that $18,200 annual salary of Mrs. Malone was reasonable. The experience, ability, and responsibility of Mrs. Malone were of essential importance to petitioner. These were hectic war years and petitioner having large Government contracts expanded rapidly. Mrs. Malone rendered valuable services to the corporation in an executive capacity, being primarily responsible for financial and administrative matters and much of the general management. In fact, from the evidence at the hearing we would conclude that Mrs. Malone was petitioner's most valuable employee and executive. The other two executives also received $18,200 annually. Mrs. Malone was not a stockholder, nor related to the stockholders, but was a bona fide employed executive. We find no reason at all to disturb the salary which petitioner's directors and officers decided to pay Mrs. Malone and which was, in fact, paid to her. On this first issue, we hold that $18,200 annual salary of Mrs. Malone in 1942 and 1943 was reasonable and a deductible expense.

### Issue 2.

The respondent made a similar disallowance of $8,200 of the $18,200 annual salary received by Mrs. Malone in 1941. Petitioner assigns error to this disallowance only as affecting the unused excess profits credit to be carried forward in 1942, which year is before the Court. The year 1941 is not now before us, but section 272 (g), I. R. C., confers jurisdiction to consider facts in other years in order to determine a deficiency for the year in question. *Greenleaf Textile Corporation,* 26 B. T. A. 737, affd. per curiam, 65 F. 2d 1017. For the reasons given under Issue 1 above, we sustain petitioner's deduction of $18,200 salary for Mrs. Malone for 1941. The unused excess profits credit adjustment, if any, shall be computed in accordance with section 710 (c), I. R. C., as affecting 1942 under Rule 50.

*Issue 3.*

Petitioner paid a $6,864 dividend in February 1924. As of December 31, 1923, petitioner had an operating deficit of $10,215.54, but for the year 1924 a net income of $16,400.71 was derived. Respondent determined that equity invested capital for the years 1942 and 1943 should be reduced by $6,864, contending that dividends paid in 1924 were paid out of capital since they are to be deemed paid as of December 31, 1923. Petitioner's position is that these dividends were paid from 1924 earnings. It must be remembered that the question we have here to decide is not what was petitioner's invested capital in 1923 and 1924. If that were our question there would probably be merit in respondent's contention. Our question is to determine petitioner's invested capital for 1942 and 1943 under section 718, I. R. C., which is quite another question. Initially, we will assume, as respondent contends, that the dividends are to be deemed paid as of December 31, 1923, and hence out of capital. To reduce equity invested capital, respondent relies on section 718 (b) (1) of the Code which provides as follows:

SEC. 718. EQUITY INVESTED CAPITAL.

(b) REDUCTION IN EQUITY INVESTED CAPITAL.—The amount by which the equity invested capital for any day shall be reduced as provided in subsection (a) shall be the sum of the following amounts—

(1) DISTRIBUTION IN PREVIOUS YEARS.—Distributions made prior to such taxable year which were not out of accumulated earnings and profits;

However, respondent has neglected to account for section 718 (a), I. R. C., which defines equity invested capital. Equity invested capital is the sum of several items, including money paid in (sec. 718 (a) (1)), property paid in (sec. 718 (a) (2)), and also accumulated earnings and profits (sec. 718 (a) (4)).

Petitioner treated the $6,864 as paid out of earnings. Assuming respondent is correct and the payment was from capital, a deduction of $6,864 follows by applying section 718 (b) (1). However, the accumulated earnings and profits for 1924 as undiminished by the dividends are thereby increased by $6,864 and this increase is added to equity invested capital under section 718 (a) (4), *supra.*

In accounting terminology, the final result of a declaration and payment of a dividend is a credit entry to cash and debit entry to either earned surplus or capital. Respondent debits (reduces) the capital account, while petitioner debits (reduces) earned surplus. But since the effect on equity invested capital is in issue and equity invested capital is computed by adding the balance in capital account and earned surplus (sec. 718 (a)), respondent's contention is pointless. To sustain respondent would, in effect, reduce equity invested capital by $13,728 on account of a $6,864 dividend, by deducting $6,864 from

earned surplus as petitioner contends and also reducing capital $6,864 without adjusting the earned surplus for the change. This is obviously not contemplated by the statute. The statute regarding what constitutes equity invested capital must be read as a whole. On this issue we hold for petitioner.

*Issue 4.*

The respondent excluded from equity invested capital $31,809.68 from 1942 and $32,309.68 from 1943, representing the forgiveness of officers' salaries in 1936. These officers were stockholders of petitioner and the facts show that in executing forgiveness of their accrued salaries in 1936, they clearly intended to make a contribution to petitioner's paid-in surplus and thus improve the financial condition of petitioner. Petitioner credited paid-in surplus for these salaries. However, respondent argues that the salaries were unreasonable, that the salaries were owed to stockholders and were not in fact paid and subsequently repaid to petitioner, and concludes that the credit should have been to earned surplus. Respondent also raises the question that capital has been increased twice because of the forgiveness of salaries. Respondent has not made clear whether he has abandoned any of these arguments.

Respondent's argument that earned surplus should be credited is analogous to his argument in Issue 3 above. Forgiveness of accrued salaries owed by petitioner results accountingwise in a debit (decrease) to accounts payable and a credit (increase) to either paid-in surplus or earned surplus. Since by definition equity invested capital is made up by addition of several factors, including paid-in surplus and earned surplus (sec. 718 (a)), it is irrelevant for the respondent to argue that earned surplus should have been increased instead of paid-in surplus. This question is moot since the resulting equity invested capital is not changed by respondent's adjustment.

Moreover, respondent's argument that the accrued salaries were unreasonable in the years accrued, 1931 to 1936, is also irrelevant. In those years the salary accounts were accrued as expenses, consequently reducing profits. If the salaries of those earlier years are now disallowed as expenses, then the earnings of those years should be increased and hence accumulated earnings and profits would thereby be increased the exact same amount. Since equity invested capital is in issue and includes accumulated earnings and profits, the disallowance of ureasonable salaries automatically increases equity invested capital the same amount.

Of course, the proprietorship account should be increased only one time, whether it be the paid-in surplus or earned surplus account is irrelevant for the issue involved here. Equity invested capital should

be increased by the forgiveness of officers' salaries, who were also stockholders, but should be increased only one time. Respondent seems to make some kind of an argument in his brief that he may have already increased petitioner's equity invested capital by the amount of this forgiveness of indebtedness. Of course, if that has been done it should not be done again. However, there is nothing before us to indicate that it has been done. A Rule 50 computation should follow what we have decided as to this issue.

### Issue 5.

The question presented here is whether the moneys advanced to Leventhal Patents constitute inadmissible assets to be excluded from equity invested capital. Section 720 (a) (1) (A), I. R. C., defines inadmissible assets as "Stock in corporations except stock in a foreign personal-holding company, and except stock which is not a capital asset." Petitioner expended $54,588.79 between 1931 and the end of 1936 in experimental work for Leventhal Patents. These moneys were spent in good faith in the hope that the patents might be developed so as to produce future business for petitioner. The amounts were treated upon petitioner's books as sales to Leventhal Patents. There was no intention originally that petitioner should become a stockholder in Leventhal Patents. However, when it became evident that Leventhal Patents could not pay its indebtedness, by an agreement in November 1936, petitioner took over some stock. Subsequently petitioner made further expenditures totaling $18,000 for which it received stock directly. Petitioner concedes that this $18,000 is an inadmissible asset. As of 1936, petitioner's interest was converted into an investment in stock. It was no longer an account or note receivable thereafter regardless of the earlier arrangement and regardless of the bookkeeping descriptions. Section 720 (a) (1) (A), defines stock in corporations, with some exceptions not applicable here, as an inadmissible asset. The apparent intention was that a corporation's assets should constitute equity invested capital only once for it, but not also for a second corporation holding stock in the first corporation. The statute makes no reference to the manner of acquisition of inadmissible assets. Indeed, there is no important difference between a corporation's acquiring the stock of another company for cash or performing services for which it is reimbursed in stock. In the end there is obtained an inadmissible asset.

The fact that the stock was acquired to salvage a bad debt is not germane here. In *Logan & Kanawha Coal Co.*, 5 T. C. 1298, stock of coal producing corporations acquired by a corporation engaged in the sales of coal in order to insure a favorable position to secure supplies constituted an inadmissible asset under section 720 (a) (1) (A).

Similarly here the expenditures of petitioner from 1931 to 1936 constitute an inadmissible asset. We hold for respondent on this issue.

### Issue 6.

Petitioner amortized the $54,588.79 expenditures in Leventhal Patents made between 1931 and 1936 over the period from 1941 to 1948. In 1941, petitioner let the venture become inactive by not putting any more money in it and in 1948 the patents expired. Aliquot portions of these amortization deductions in 1942 and 1943 were disallowed by respondent. As stated in the preceding Issue 5, the petitioner spent $54,588.79 in experimental services for Leventhal Patents and for these services was reimbursed in shares of stock in 1936. There is, therefore, no basis for an allowance for amortization of what are considered as development expenses by the petitioner, inasmuch as the asset which would have been the subject of an annual amortization or depreciation adjustment has taken the form of a stock investment on the petitioner's books. Stock is not a depreciable asset. We hold for the respondent and disallow these deductions.

*Decision will be entered under Rule 50.*