*Decision will be entered under Rule 50.*

THE AKRON DRY GOODS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19259.  Promulgated September 29, 1952.

*Harold J. Holshuh, Esq.*, for the petitioner.
*William R. Bagby, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* The respondent determined a deficiency of $16,671.67 in petitioner's excess profits tax for the fiscal taxable year ended January 31, 1945.

Petitioner claims an overpayment of $22,486.48 in excess profits tax for that year.

The petitioner alleges that respondent erred in failing to allow:

(1) Depreciation of $4,400.26 on furniture and fixtures;

(2) Depreciation of $2,998.20 on a portion of a building known as 18 South Main Street, Akron, Ohio;

(3) Depreciation of $7,496.04 on a portion of a building known as 20–24 South Main Street, Akron, Ohio;

(4) Depreciation of $7,354.60 on a building known as 25–27 South Howard Street, Akron, Ohio;

(5) Depreciation of $1,742 on a building known as 19 South Howard Street, Akron, Ohio; and

(6) An amount of $199,840.19 as a contribution to capital, or, in the alternative, $44,573.60 of accumulated earnings and profits, in arriving at equity invested capital at the beginning of the fiscal taxable year for excess profits tax purposes.

The respondent affirmatively alleges that petitioner, by reason of its inconsistent position taken in prior taxable years, is now estopped from claiming depreciation on any and all of its depreciable capital assets in excess of that allowed in respondent's determination.

This proceeding has been submitted upon a voluminous stipulation of an involved state of facts, including many exhibits, and an agreed statement of what a prospective witness would have testified as to furniture and fixtures had he been called at the hearing. The stipulation embraces certain concessions relative to respondent's determination and also certain figures and matters relative to a redetermination of petitioner's tax liability dependent upon the decision herein on the issues involved.

The stipulated facts are found accordingly and included herein by reference. There will be set forth herein only such facts as are deemed necessary to the disposition of this proceeding.

The petitioner, an Ohio corporation, was organized on July 1, 1927, and its place of business is located at 18–20–24 South Main Street and 19–25–27 South Howard Street, Akron, Ohio. Each of those properties abutted an alley running through the middle of a city block. During the taxable years 1928 to 1945 the petitioner has engaged in the retail department store business and has maintained its books and filed its Federal tax returns on the accrual basis of accounting for the fiscal year ending January 31. Petitioner's income and excess profits tax returns for the fiscal taxable year ended January 31, 1945, were filed with the collector of internal revenue for the 18th district of Ohio.

The petitioner was organized by J. H. Vineberg and throughout the subsequent years he owned all of its outstanding common stock

and most of its preferred. Prior to July 1, 1927, Vineberg owned all the assets of a retail dry goods business conducted in buildings located at 20 South Main and 19 South Howard Streets which he owned and in a building at 18 South Main which was leased. On July 1, 1927, Vineberg conveyed the personal assets, including accounts receivable, inventories, furniture and fixtures, etc., and the leasehold interest to petitioner. Subsequently on July 1, 1928, Vineberg conveyed to petitioner the land and buildings at 20 South Main and 19 South Howard Streets in consideration of the petitioner's assumption of mortgages thereon in a stipulated amount. Those mortgages were paid in full on July 18, 1928, in connection with and out of proceeds from a land trust certificate transaction, hereinafter described.

On May 5, 1928, petitioner purchased land and buildings at 24 South Main and 25–27 South Howard Streets for a stipulated cash consideration.

On July 18, 1928, in connection with a land trust certificate transaction the petitioner by warranty deed conveyed fee simple title to the properties at 20–24 South Main and 19–25–27 South Howard to the First Trust and Savings Bank of Akron, hereinafter referred to as the Bank. On the same date, that Bank declared itself trustee of those properties for the benefit of the holders of a total of 900 shares of $1,000 face value land trust certificates, each share representing 1/900 of the equitable ownership and beneficial interest in those properties and each being entitled to a pro rata share of the annual rental therefrom. Also, on the same date, the Bank as trustee leased those same properties to petitioner for 99 years, with right of renewal, for a specified rent per annum and certain other payments for taxes and charges in connection with the leasehold as detailed in the stipulation. The lease gave petitioner the right to repurchase the lessor's interest in those properties at specified prices depending upon when the option was exercised. Also, the lease obligated petitioner to pay a certain amount per annum to the Bank to be held in an account for petitioner denominated a "depreciation fund" to be applied to the future purchase or redemption of outstanding land trust certificates. Further, the petitioner obligated itself to make certain leasehold improvements at a cost of approximately $200,000 to the properties at 20–24 South Main Street.

The purchasers of the land trust certificates paid the face value thereof or a total of $900,000 of which, after deducting brokerage and expenses, the petitioner received the net proceeds in the amount of $864,000 which was applied in payment of three prior existing mortgages on the properties. The proceeds of the transaction so received by petitioner were $116,491.75 less than the cost to petitioner of the properties conveyed to the Bank. At the time of the land trust cer-

tificate transaction the Bank made a separate agreement with petitioner to lend it about $220,000 for petitioner's erection of improvements on a portion of the leased premises.

On its tax return for the fiscal year ended January 31, 1929, petitioner reported a loss of $116,491.75 from the sale of real estate embracing the above-mentioned properties. The respondent at first determined that the land trust certificate transaction was a mortgage and disallowed the claimed loss, but proposed the allowance of depreciation, resulting in a proposed tax deficiency of $9,580.10 for that taxable year. In several conferences with respondent the petitioner insisted that it intended to make and did make a sale of the properties in the 1928 transaction and it was finally agreed by petitioner and respondent, with both having knowledge of all the facts, that the transaction was a sale resulting in a deductible loss in an amount agreed to by the parties after certain adjustments to the petitioner's cost basis, and petitioner paid the determined additional tax of $780.75 for the taxable year 1929.

The lease, as modified by agreement from time to time effecting reductions in annual rentals and reduction or elimination of other payments thereunder, remained in effect throughout the years to and including the taxable year 1945. The stipulation sets forth the rentals paid by petitioner to the Bank as trustee for the certificate holders during those years. Throughout the fiscal years from 1929 to 1945, inclusive, the petitioner did not treat the properties conveyed to the Bank as an asset. In its tax returns for each of those years including the taxable year 1945 petitioner reported the rental under the lease as rent paid and not as interest on a mortgage and further it did not claim any depreciation on the properties located at 19–25–27 South Howard Street. (Depreciation claimed on the improvements erected at 20–24 South Main Street will be hereinafter discussed.)

In the instant proceeding the petitioner, for the first time, claims that the 1928 land trust certificate transaction was not a sale resulting in a loss for the fiscal year ended January 31, 1929, but was a mortgage; that the properties involved therein remained capital assets of petitioner; and that for the taxable fiscal year 1945 petitioner is entitled to deductions for depreciation in the amounts of $7,354.60 on the building at 25–27 South Howard Street and $1,742 on the building at 19 South Howard Street based on the cost and an agreed useful life of 25 years at the time of petitioner's acquisition thereof on May 5, 1928, and July 1, 1928, respectively.

In the instant proceeding the formal details of the land trust certificate transaction pertaining to the fee simple deed to the Bank as trustee for the certificate holders and the leasing of the properties at a specified rental, etc., are essentially similar to those obtaining in the

case of *F. and R. Lazarus & Co.*, 32 B. T. A. 633, affd. 101 F. 2d 728, affd. 308 U. S. 252, wherein it was held that a deed absolute in form was, in equity, a mortgage to secure a loan where the parties so intended, and the taxpayer was allowed depreciation on the buildings on the property embraced in the deed. On authority of that case the petitioner contends for a similar holding here. However, in the *Lazarus* case the facts are that, aside from the deed indicating a sale, the other facts surrounding the transaction and particularly the testimony of the officers of the taxpayer and of the bank as to their intentions *at the time*, established a mortgage loan transaction and not a sale. In the instant case we have no such testimony. On the contrary, the petitioner's intention at the time is evidenced by its actions and representations then and in subsequent years for its own accounting purposes and for tax purposes. In treating the transaction as a sale in July 1928 resulting in a deductible loss the petitioner realized a substantial income tax benefit for the fiscal year 1929. Thereafter, the properties were not carried on petitioner's books as capital assets and thus were not taken into account in a question involving petitioner's insolvency in the subsequent taxable year 1936, hereinafter discussed.

The record herein does not support a conclusion that the July 1928 transaction cast in the form of a sale, was, in equity, a mortgage as contended by petitioner. Furthermore, now to correct for the purpose of a claimed tax deduction benefit in the taxable year 1945 an alleged mistake, but actually an inconsistent position, which resulted in the petitioner's election to take a tax deduction benefit in the taxable year 1929—a year as to which any adjustment is barred by the statute of limitations—would be contrary to the established principle of not allowing a double tax benefit. *Robinson* v. *Commissioner*, 181 F. 2d 17, affirming 12 T. C. 246. Cf. *Wheelock* v. *Commisisoner*, 77 F. 2d 474, affirming 28 B. T. A. 611.

We hold that petitioner is not entitled to the claimed deductions for depreciation in the amounts of $7,354.60 on the building at 25–27 South Howard Street and $1,742 on the building at 19 South Howard Street.

The leasehold interest which Vineberg transferred to petitioner on July 1, 1927, embraced improved property at 18 South Main Street owned by Emma A. Bradley. On December 4, 1928, the petitioner entered into a new lease of those premises for a period of 25 years commencing January 1, 1929 and ending December 31, 1953, and that lease was still in effect during the taxable year 1945. At a stipulated cost to petitioner it erected a portion of a building on the 18 South Main property which was completed on or about January 31, 1929. At the same time petitioner, at a stipulated cost to it, com-

pleted the erection of a portion of a building on the property at 20–24 South Main which property was involved in the above-mentioned conveyance to the Bank and long term lease to petitioner. The buildings so erected by petitioner were still used in its business during the taxable year 1945.

On its tax returns for the fiscal years 1929 to 1936, inclusive, petitioner claimed and was allowed depreciation on the 18 and the 20–24 South Main Street leasehold improvements in amounts as set forth in the stipulation. With respect to those properties petitioner did not claim any depreciation deductions on its tax returns for the years 1937 to 1944, but during those years and also 1945 they were carried on petitioner's books and annual statements and for purposes thereof were depreciated at certain stipulated rates per annum. It is stipulated that based on the cost and a 25-year useful life petitioner would be entitled to depreciation deductions of $3,009.50 on the 18 South Main Street improvement and $7,484.74 on the 20–24 South Main Street improvement, for the taxable year 1945, provided petitioner's right now to claim such deductions was not lost by certain events transpiring during the fiscal year 1936, as hereinafter discussed.

The furniture and fixtures which Vineberg transferred to petitioner on July 1, 1927, were second hand and their economic useful life had expired prior to the taxable year 1945 and petitioner concedes that it is not entitled to any depreciation thereon. Petitioner now claims a depreciation deduction, for the taxable year 1945, in the amount of $2,640.64 (instead of the amount alleged in the petition) on furniture and fixtures purchased new at the various times and costs during the fiscal years 1928 to 1936, inclusive, as set forth in detail in the stipulation and which equipment was still being used in petitioner's business during the taxable year 1945. Hereinafter, any reference to furniture and fixtures includes only that acquired as above-mentioned. The stipulation sets forth the amounts of depreciation claimed and allowed on a basis of cost and a useful life of 10 years on petitioner's tax returns for the fiscal years 1928 to 1934, inclusive, and on a basis of cost and a useful life of approximately 12½ years on its returns for the fiscal years 1935 and 1936. The stipulation sets forth the remaining undepreciated cost of the petitioner's furniture and fixtures at February 1, 1936.

In its tax returns for the fiscal years 1937 through 1944, petitioner claimed and was allowed depreciation on its furniture and fixtures on a remaining undepreciated basis of $5,000 (which was considerably less than undepreciated cost shown on its books) and a useful life of 12½ years commencing February 1, 1936, pursuant to an agreement between petitioner and respondent in settlement of a tax dispute as hereinafter discussed.

On petitioner's books of account and in its annual statements for the fiscal years 1937 through 1944 the petitioner showed its cost of furniture and fixtures and accrued depreciation thereon in certain stipulated amounts per annum whereby it was completely depreciated in the fiscal year ended January 31, 1943. In the fiscal year 1945 the petitioner's book account of accrued depreciation on furniture and fixtures equalled the total cost thereof, but petitioner revised such account by the reduction thereof in an amount set up as a then remaining undepreciated cost arrived at by using the undepreciated cost at the close of the fiscal year ended January 31, 1936, and from that date forward applying a revised useful life of approximately 20 years from date of acquisition.

The petitioner's claim herein for the allowance of additional depreciation in the amount of $2,640.64 on furniture and fixtures is based on two factors, namely, the proposed revised cost basis at February 1, 1936, which is inconsistent with the above-mentioned agreement with respondent and the proposed longer useful life. The first factor is dependent upon our conclusion as to the effect of the 1936 agreement with respondent, hereinafter discussed, and the record fails to establish the second factor as to the useful life.

During the taxable year ended January 31, 1936, petitioner's financial position was such that it was faced with a choice of a compromise with its creditors or involuntary bankruptcy. One of petitioner's creditors, the First Central Trust Company of Akron, Ohio, which held two promissory notes of petitioner in the total principal amount of $227,998.81, made an appraisal of the value of petitioner's assets on the basis of a forced sale and determined that as of August 30, 1935, its liabilities were $341,678.31 in excess of its assets. The latter included furniture and fixtures at a value of $5,000 and included the leasehold improvements erected by petitioner at 18–20–24 South Main at a zero value because petitioner was in default in rental payments under its leases, but made no mention of petitioner's having any interest in the properties at 19–25–27 South Howard under the land trust lease. By compromise agreement with certain creditors on August 30, 1935, petitioner settled $353,378.91 of its outstanding debts by payment of $40,000 in cash plus application of collateral held by creditors and the latter's forgiveness of amounts totalling $289,865.06. As a result of that settlement petitioner made a net credit to surplus of $273,064.96 on its books.

In its tax return for the fiscal year 1936 the petitioner reported on Schedule L (reconciliation of net income and analysis of changes in surplus) a credit to surplus in the amount of $273,064.96 with the explanation, "liabilities adjusted to avoid bankruptcy." In the analysis of surplus attached to petitioner's balance sheet statement for that

year, an addition to surplus in the above amount was entered with the explanation, "amount realized from creditors' adjustment of liabilities."

The petitioner requested respondent to examine its tax returns for the fiscal years 1935 and 1936 to determine whether the above-mentioned debt forgiveness resulted in taxable income. The respondent assigned a revenue agent to make the requested examination. During 1936 the agent and an engineer revenue agent made respective determinations of the value of petitioner's assets. The agent took the position that petitioner was solvent immediately after the debt forgiveness and that the entire amount of the forgiveness totaling $289,865.06 constituted taxable income to petitioner in the fiscal year 1936. Had that amount been treated as income there would have been a deficiency of $37,238.34 in petitioner's income tax liability for the fiscal year 1936.

However, the petitioner insisted that the fair market value of its assets, immediately after the forgiveness, was less than its liabilities and that since it was insolvent after the forgiveness on August 30, 1935, no part of the discharge of indebtedness represented taxable income. The petitioner and the agent discussed the matter and finally the agent, acting for respondent, acquiesced in petitioner's contention that immediately after the forgiveness on August 30, 1935, its furniture and fixtures had a fair market value of $5,000 and that its interests under both the Bradley lease and the land trust certificate transaction lease had a fair market value of zero; that on that basis of valuation of assets petitioner was insolvent immediately after the debt forgiveness; and that no taxable income was realized from the debt forgiveness. Accordingly, the agent, acting for respondent, accepted petitioner's 1936 return as to treatment of the debt forgiveness and he did not include any part of the forgiveness in income in his determination of petitioner's 1936 taxable income or in his report of his examination. In consideration of the agent's determination petitioner agreed with him, as representative of the respondent, that in the future years commencing with the fiscal year beginning February 1, 1936, the allowable depreciation on all petitioner's depreciable assets on hand on that date would be determined by using a valuation or depreciable basis of $5,000. A copy of the agent's report was given petitioner in May 1936.

Pursuant to the above-mentioned agreement the petitioner in each of its returns for the fiscal years 1937 to 1944, claimed depreciation on furniture and fixtures on the basis of $5,000 and a life of 12½ years and by way of explanation it stated "Per letter of April 21, 1936, by * * *, Internal Revenue Agents." Further, on its returns for those years, petitioner claimed no depreciation on the leasehold improvements erected by it, as hereinabove stated.

The stipulation states that, immediately after the forgiveness, it is factually questionable whether petitioner's liabilities continued to exceed the amount realizable from a forced sale of petitioner's assets but it is clear that its liabilities were less than the fair market value of its assets to a going business. There is no proof as to what that fair market value was.

The petitioner now contends that, despite the facts that the 1936 agreement resulted in a tax benefit for the fiscal year 1936, as to which any adjustment is barred by the statute of limitations, and that both petitioner and respondent have abided by the 1936 agreement as affecting the taxable years 1937 to 1944, inclusive, the agreement entered into with respondent should be totally disregarded. On that premise petitioner claims depreciation deductions for the fiscal year 1945, on the leasehold improvements erected at 18–20–24 South Main and on furniture and fixtures as hereinbefore stated. Respondent contends that while the 1936 agreement was not a formal closing agreement nevertheless it has been fully performed by respondent and petitioner having accepted the benefit of such performance should be bound fully to perform its part of the terms of the agreement as affecting the taxable fiscal year 1945.

The stipulation sets forth the conflicting conclusions arrived at in 1936 by certain interested parties as to the value of petitioner's assets and as to whether it was insolvent or solvent and, if the latter, to what extent, immediately after the forgiveness. The stipulation does not set forth sufficient evidentiary facts to enable this Court to test the conclusions of those parties or to reach any conclusion of its own as to those matters. In that posture of the case this Court is unable to determine the correctness of the respective claims made by petitioner and respondent, in 1936, as to the amount of taxable income, if any, realized by petitioner in its taxable year 1936 from the debt forgiveness. On this record it appears that upon making an examination in 1936 the respondent concluded that petitioner realized income from the debt forgiveness resulting in a tax deficiency of $37,238.34 and that to avoid the assertion of such deficiency against it the petitioner entered into a compromise settlement agreement whereby the respondent, acting through his agent, determined there was no income from the forgiveness in consideration of petitioner's agreeing to write down the basis of its assets then on hand for purposes of future depreciation deductions thereon. In effect, petitioner agreed that instead of taxing income derived from the 1936 debt forgiveness as proposed by respondent, such income should be applied as a reduction of petitioner's cost basis of depreciable assets and thus a recovery of cost to that extent.

We conclude that the petitioner elected to take a course of action by an agreement in 1936 which resulted in a tax benefit for the fiscal year ended January 31, 1936, and it may not now take a position inconsistent therewith, for the taxable fiscal year 1945, so as to restore the cost basis previously written off and claim depreciation deductions thereon resulting in a double tax benefit. *Robinson* v. *Commissioner*, *supra*. We hold that petitioner is not entitled to the claimed depreciation on its leasehold intests in buildings at 18–20–24 South Main Street and on furniture and fixtures.

In connection with the above-mentioned two promissory notes of petitioner in the total principal amount of $227,998.81 payable to the First Central Trust Company of Akron, the petitioner's president J. H. Vineberg endorsed the notes at the time they were given in 1932 thereby promising to pay any portion thereof as to which petitioner failed to make payment.

In connection with petitioner's debt forgiveness on August 30, 1935, the First Central Trust Company's pro rata share of petitioner's cash payment plus collateral applied against those two notes left an unpaid balance of $199,840.19. As a condition to the petitioner's being discharged of that amount of indebtedness, Vineberg gave the Bank his personal unsecured and uncollateralized note for $199,840.19 payable on or before August 30, 1940. After the debt forgiveness on August 30, 1935, petitioner never carried any part of that $199,840.19 as an account owed by it to Vineberg and he never made any claim against petitioner for any portion thereof. It is stipulated that by the forgiveness of that indebtedness "petitioner's capital structure was improved to the extent of $199,840.19."

Petitioner contends that the amount of $199,840.19 constituted a contribution to capital in determining its equity invested capital at the beginning of the taxable year 1945, for excess profits tax purposes. On brief both petitioner and respondent state that decision on this issue is controlled by *Crean Brothers, Inc.*, 15 T. C. 889, which held against petitioner's contention. Since the filing of briefs that case was reversed by a divided court, *Crean Brothers, Inc.* v. *Commissioner*, 195 F. 2d 257, (C. A. 3, March 17, 1952). With all due respect for the majority opinion of the Court of Appeals for the Third Circuit we decline to follow the reversal of the *Crean* case, and hold for respondent on this issue.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

LeMire and Johnson, *JJ.*, dissent.