THE TIMES TRIBUNE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33263.   Promulgated May 26, 1953.

*Max Leopold, Esq.*, for the petitioner.
*Charles J. Hickey, Esq.*, for the respondent.

#### OPINION.

MURDOCK, *Judge:* The Commissioner determined deficiences as follows:

| Years | Income tax | Declared value excess-profits tax | Excess profits tax |
|-------|-----------|-----------------------------------|--------------------|
| 1944 | $5, 267. 20 | $2, 663. 38 | |
| 1945 | | 627. 66 | $16, 541. 99 |
| 1946 | 4, 404. 05 | | |

The only issue for decision is pleaded as follows:

The Commissioner erred in not allowing as part of invested capital the amount of $32,763.00, representing preferred stock paid in for property, and the amount of $132,730.00 as a contribution to capital.

The record consists of a stipulation of facts, various returns and consents of the petitioner, and an admittedly correct copy of the notice of deficiencies, all of which, so far as material hereto, are adopted as findings of fact.

The petitioner was incorporated under the laws of Pennsylvania as of December 31, 1919.  The returns for the periods here involved were filed with the collector of internal revenue for the first district of Pennsylvania.

The following is from the statement enclosed with the notice of deficiencies:

*Computation of Excess Profits Credit*
*Year 1945*

| | |
|---|---|
| Money paid in for stock | $175, 000. 00 |
| Accumulated earnings and profits | None |
| Equity invested capital | 175, 000. 00 |
| 50% of average borrowed capital | 37, 549. 32 |

```
Total invested capital_____ $212,549.32
Excess profits credit at 8%_____   17,003.95
```

It is determined that the equity invested capital of your corporation under sections 718(a)(1) and (2) of the Internal Revenue Code is in the amount of $175,000.00.

\* \* \* \* \* \* \*

Deficiency in Excess Profits Tax for the year 1945 $16,541.99

A trustee took possession of the property and assets of the petitioner prior to March 11, 1936, and an order was made on August 30, 1934, directing all creditors to file proof of their claims with the Referee in Bankruptcy. The District Court of the United States for the Western District of Pennsylvania on or before July 7, 1936, approved and ordered to be consummated a plan of reorganization of the petitioner under section 77B of the Bankruptcy Act. The petitioner, under the plan, proposed "To alter its capital structure so that in lieu of the 1,750 shares of common stock of the par value of $100.00 per share now outstanding, its capital shall be represented by 500 shares of common stock of the par value of $100.00 and by 5,000 shares of preferred stock of the par value of $10.00" to be issued:

*Common*
175    1 for 10 to the old stockholders.
325    to the petitioner to be used as collateral for a loan.

*Preferred*
1105.5  in payment of interest to June 1, 1936 on mortgage bonds of the petitioner.
373    to pay 20% of wage and rent claims against the petitioner.
1709    to general creditors at 12% of their claims.
1812.5  shares of the preferred were to be retained by the petitioner.

The court, in its order, found that the petitioner owed mortgage bondholders $65,000 of principal and $11,055 of interest, wage claimants $11,988.53, rent claimants $6,650 and nonpriority general creditors $142,414.47, all of which will be discharged "upon the confirmation and execution of the Plan." The court ordered that the plan be consummated and a report made to the court by the petitioner at a term of court to be held on September 14, 1936. An exhibit in the 77B proceeding shows that prior to the order no interested party had rejected the plan and all had accepted it except the holders of 39 shares of common, claimants to $1,237.28 of wages and to $150 of rent, and unsecured creditors for $38,740.83, all of whom had not acted upon the plan.

The above summarizes all of the material facts established by the evidence. There are no more except as returns may be taken as proof of facts.

The petitioner reported losses for all years from 1933 through 1942. The return for the calendar year 1936, which reports a loss of $529.93, has attached to it three balance sheets, one as of December 31, 1935,

another as of September 30, 1936, and the third as of October 31, 1936, both of the latter being described as "Closing Balance Sheet of Old Business and Opening Balance Sheet of New Business." No closing balance sheet for 1936 was attached to the return but the three balance sheets attached to that return and the opening balance sheet for 1937 attached to the return for that year may be summarized as follows:

| ASSETS | Dec. 31, 1935 | Sept. 30 1936 | Oct. 31, 1936 | 1937 |
|---|---|---|---|---|
| Cash | $2,266.93 | $1,666.09 | $5,397.74 | $2,809.23 |
| Accounts receivable | 27,983.46 | 28,396.56 | 13,674.66 | 12,730.12 |
| Inventories, investments, and unexpired insurance | 14,358.21 | 16,805.78 | 6,605.91 | 11,233.59 |
| Fixed assets, less depreciation | 185,807.10 | 186,224.16 | 154,419.69 | 155,607.37 |
| Good will | 100,000.00 | 100,000.00 | | |
| Total | 330,415.70 | 333,092.59 | 180,098.00 | 182,380.31 |
| LIABILITIES | | | | |
| Accounts and notes payable | 168,407.18 | | | 5,201.86 |
| Current liabilities* | | 185,257.95 | 36,006.52 | |
| Wages accrued | 13,337.19 | | | 3,680.81 |
| Bonds | 65,000.00 | 65,000.00 | 65,000.00 | 93,026.40 |
| Bond interest accrued | 3,905.00 | 3,905.00 | | |
| Circulation agents' bonds | | | | 94.34 |
| Advance subscriptions | 869.70 | 869.70 | | |
| Capital stock | 175,000.00 | | | |
| Deficit | 96,603.37 | | | |
| Preferred stock | | | 32,763.00 | 32,763.00 |
| Common stock | | | 17,500.00 | 17,500.00 |
| Surplus | | 78,059.94 | 28,828.48 | 30,163.90 |
| Total | 330,415.70 | 333,092.59 | 180,098.00 | 182,380.31 |

*Includes accounts and notes payable, wages, taxes, rent and other items, and, for Oct. 31, 1936, amounts due on equipment.

The petitioner summarizes its argument as follows.

1. The issuance by petitioner of preferred stock in the amount of $32,763.00 represents property paid in for stock within the meaning of Section 718(a) of the Internal Revenue Code—and the amount of $32,763.00 is, therefore, a proper addition to equity invested capital in determining petitioner's excess profits credit for the purpose of computing its excess profits tax liability for the calendar year 1945.

2. The amount of $132,730.00, which represents a forgiveness of indebtedness by creditors of the petitioner, is properly to be considered a "contribution of capital" within the meaning of Section 718 of the Internal Revenue Code—and, therefore, is also an addition to equity invested capital in determining petitioner's excess profits credit for the purpose of computing its excess profits tax liability for the calendar year 1945.

Section 718 (a) (2), upon which alone the petitioner relies in its argument, provides that there shall be included in equity invested capital

Property (other than money) previously paid in * * * for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange.

This provision has been discussed heretofore by this Court in *Crean Brothers, Inc.*, 15 T. C. 889, revd. 195 F. 2d 257. See also *Akron Dry Goods Co.*, 18 T. C. 1143. The petitioner ignores those cases.

The Commissioner contends that the petitioner has failed to prove that the plan of reorganization, as shown in the stipulated approval of the plan, was actually carried out or how it was eventually carried out, but if it be assumed, for the purpose of argument, that the plan as approved by the court was actually carried out, still the petitioner has failed to show that its equity invested capital was in excess of the $175,000 determined by the Commissioner. He points out that tax returns of the petitioner introduced in evidence are merely self-serving statements and do not prove any facts favorable to the petitioner. *Jacob Roffwarg*, 2 B. T. A. 332; *Jessie G. Sheen*, 6 B. T. A. 114; *Watab Paper Co.*, 27 B. T. A. 488, 506, appeal dismissed 68 F. 2d 998 and 1021. Such returns are admissions against interest and may prove facts therein detrimental to the petitioner. *John G. Curtis*, 12 T. C. 810, 814, affd. 183 F. 2d 7; *Old Mission Portland Cement Co.* v. *Commissioner*, 69 F. 2d 676, 680, affirmed on other grounds 293 U. S. 289; *Bedell* v. *Commissioner*, 30 F. 2d 622, 625, affirming 9 B. T. A. 270. The above rules are applicable regardless of which party introduces the returns. *Roche* v. *Commissioner*, 63 F. 2d 623. Although the order of the District Court proves that there was a plan which the court approved and ordered to be consummated, nevertheless, there is no proof that the plan was carried out or how it was carried out. The returns indicate that there was later deviation from the plan.

The petitioner has not disclosed the source of the amounts used by it, in its argument. The plan was to distribute 3,187.5 shares of preferred stock to creditors for $31,872.45 of their debts and to cancel the balance of those debts in the amount of $140,235.55. The evidence does not show how any of the preferred shares were actually issued or for what they were issued and the Court cannot even guess how or under what circumstances 3,276.3 instead of 3,187.5 shares of preferred were issued or where the petitioner obtained the figure of $132,730 to represent canceled debts. Proof is lacking on other more essential points. A court is not permitted to guess at any fact in order to decide a point or issue in favor of the party who had the burden of proving that fact, but must decline to make the decision or decide the other way unless it is able to find satisfactory proof of each such essential fact in the record.

Section 718(a)(1) would no doubt apply and the basis limitation of section 718(a)(2) would probably not apply to various transactions where creditors of a solvent corporation, able to pay its debts, indicated to the corporation that they would prefer to receive stock of the corporation in lieu of the amount due on the debt. That would be merely a convenient way of paying cash for shares but the evidence does not show that any such thing happened in the present case. The unpaid debts were old and uncollectible, their value at no time material hereto has been shown, the debtor went into a 77B reorganization under the

Bankruptcy Act, its assets were in the hands of a trustee with whom all debtors had been required to file proof of all their claims, the court approved and ordered consummation of a plan under which preferred stock was to be issued to some of the creditors, and the record does not show what was done thereafter unless the balance sheets attached to the 1936 return may be taken as proof that some shares of preferred stock were issued under circumstances not shown anywhere in the record.

Creditors of a corporation in a situation in which this petitioner found itself in 1936 would not, by accepting preferred stock for a part of their claims, be paying into the corporation money or the substantial equivalent of money. The petitioner recognizes that fact by arguing that section 718 (a) (2) rather than section 718 (a) (1) applies. The cancellation of the worthless portion of debts, whether it be 100 per cent or some lesser portion, is not the paying in or contribution of either money or property to the debtor corporation or the placing of any money or property at the risk of the business of the debtor corporation. The creditors thereby merely recognize that the corporation has lost, through the unsuccessful operation of its business, the money due them, and they have no chance of recovering it. A part of the debts was canceled by operation of law through the order of the District Court having jurisdiction of the 77B proceeding under the bankruptcy laws and there is no indication that the creditors intended a gift or that the petitioner in any way recognized the amount canceled as a contribution to its paid-in surplus or capital. If the petitioner had taken the cancellations into income they could have been reflected in equity invested capital through 718 (a) (4) but should not come in a second time under any other provision. Congress was aware that worthless debts are sometimes canceled, yet it has not indicated in section 718 (a) (1) or (2) a desire or intent to recognize the cancellation of a worthless debt as a contribution by the creditor to the equity invested capital of the debtor. It seems fair to conclude from the evidence in this case that the debts due for wages, rent, and to general creditors were worthless in 1936 at least to the extent that they were not recognized in the plan as a basis for the issuance of preferred stock. Therefore, under no circumstances could those portions of those debts have created any equity invested capital for the petitioner under section 718 (a) (1) or (2).

It is entirely possible that those debts and also the amount due the mortgagee for interest were worthless to an even greater extent. The fact that the mortgagee was willing to accept preferred stock of an unsuccessful corporation instead of demanding cash or foreclosing is some indication that the debt for the interest on the mortgage was not worth its face amount. It is not unusual, in reorganization proceedings under 77B, for stock to be issued to creditors in excess of the

actual value of their debts so that they may have a better chance to recoup more of what they have lost if the future operations of the debtor prove successful. Certainly no finding is justified by this record that the mortgage interest debt was worth its full face value, that the debts for wages and rent were worth 20 per cent of their face value, or that the debts of the general creditors were worth 12 per cent of their face value. If the value of the debts had been established, it could be argued that the creditors to that extent transferred property to the petitioner for the preferred stock, risked that much in the future business of the petitioner, and equity invested capital should reflect this new capital. However, that argument should be made to Congress which must have known that such situations frequently arise but, nevertheless, provided that property paid in for shares can be reflected in equity invested capital only at its basis in the hands of the taxpayer. There is no proof of what, if any, basis those claims had in the hands of the claimants when, if ever, they surrendered all or a part of those claims for preferred stock of the petitioner. Thus, if the petitioner were to take the basis of the transferors on the property paid in for stock, the record would not show what that basis was. Furthermore, all claims surrendered for stock are debts due from the petitioner and such debts cease to be property and can have no basis for loss in the hands of the petitioner. See discussion by this Court and the dissenting opinion of the Court of Appeals in the *Crean* case and *Akron Dry Goods Co.*, *supra*. Thus, even though the creditors did invest and risk their claims in the business of the petitioner to the extent of the value of those claims, nevertheless, equity invested capital would not be increased thereby under section 718 (a) (2).

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

JOHNSON, *J.*, dissenting: I can not agree with the majority holding that the accounts payable had no value when they were exchanged for the preferred stock of the reorganized corporation. Both the creditors and the debtor corporation impliedly acknowledged that the debts had some value when the creditors exchanged their debts for preferred stock. Since the accounts receivable in the hands of petitioner's creditors were property and since the creditors exchanged the property for stock, such an exchange is property paid in for stock and is therefore within section 718 (a) of the Code. *Prosperity Co.* v. *Commissioner*, 201 F. 2d 499; affirming 17 T. C. 171; *Crean Brothers, Inc.* v. *Commissioner*, 195 F. 2d 257; reversing 15 T. C. 889; *Akeley Camera & Instrument Corp.*, 18 T. C. 1045. I therefore respectfully dissent.

ARUNDELL and LEMIRE, *JJ.*, agree with this dissent.